United States District Court
Southern District of Texas
**ENTERED**
January 21, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JON STEPHENS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-1878 |
| | § | |
| UNITED STATES, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM, RECOMMENDATION, AND ORDER**

Pending before the court[1] are Defendant's Motion for Summary Judgment (Doc. 20) and Motion to Exclude Plaintiff's Expert (Doc. 39). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **ORDERS** that Defendant's Motion to Exclude is **DENIED** and **RECOMMENDS** that Defendant's Motion for Summary Judgment be **DENIED**.

**I. Case Background**

Plaintiff filed this lawsuit against Defendant pursuant to the Federal Torts Claim Act ("FTCA").

**A. Factual Background**

Plaintiff is a forty-seven year-old United States Army veteran.[2] Plaintiff alleges that while on active duty, he suffered

---

[1] This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. See Doc. 25, Ord. Dated May 8, 2019.

[2] See Doc. 20, Def.'s Mot. for Summ. J. p. 2.

a heat stroke that led to an epileptic condition.[3] Plaintiff's condition causes him to suffer from seizures, which, in turn have caused him to collapse and hit his face, resulting in a broken nose, breathing issues, and a dorsal hump.[4]

Plaintiff was seen by physicians at the Michael E. DeBakey Veteran's Affairs Medical Center ("MEDVAMC") on July 15, 2016, with complaints about various nasal conditions.[5] The parties agree that Plaintiff was scheduled for nasal surgery to occur on December 13, 2016, but dispute what was supposed to occur during the surgery.[6] Plaintiff alleges that the surgery was supposed to correct his deviated septum and fix the dorsal hump.[7] Defendant alleges that the goal of the surgery was to correct Plaintiff's breathing issues and the dorsal hump would only be corrected if it was obstructing Plaintiff's nasal passages.[8] The surgery occurred without any correction to the dorsal hump.

Following the surgery, Plaintiff had additional issues breathing through his nose and was upset that his dorsal hump was still present.[9] On May 2, 2017, Plaintiff underwent a second

---

[3]   See id.

[4]   See id.

[5]   See id.

[6]   See id.

[7]   See Doc. 38, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 1.

[8]   See Doc. 20, Def.'s Mot. for Summ. J. p. 3.

[9]   See id. pp. 3-4.

2

surgery.[10] Again, the parties dispute the goal of the surgery. Plaintiff argues that the second surgery was to correct his breathing issues and remove his dorsal hump.[11] Defendant argues that the goal of the surgery was only to correct Plaintiff's breathing issues.[12] At a post-operation visit, Plaintiff expressed frustration that his dorsal hump had not been fixed.[13]

## B. Procedural Background

Plaintiff filed this lawsuit on June 8, 2018, incorrectly naming the United States Department of Veterans Affairs as the sole defendant.[14] On November 7, 2018, with the court's leave, Plaintiff filed an amended complaint naming the United States as Defendant.[15] On April 3, 2019, Plaintiff filed a notice that he had served Defendant with his designation of expert witnesses.[16] On April 26, 2019, Defendant filed its pending motion for summary judgment.[17] On May 29, 2019, the court extended the deadline for the designation of expert witnesses to June 14, 2019.[18] On June 13, 2019, Plaintiff

---

[10]   See id. p. 4.

[11]   See Doc. 38, Pl.'s Resp. to Def.'s Mot. for Summ. J. p. 2.

[12]   See Doc. 20, Def.'s Mot. for Summ. J. p. 4.

[13]   See id. pp. 4-5.

[14]   See Doc. 1, Pl.'s Orig. Compl.

[15]   See Doc. 12, Pl.'s Am. Compl.

[16]   See Doc. 18, Pl.'s Not. of Designation of Expert Witnesses.

[17]   See Doc. 20, Def.'s Mot. for Summ. J.

[18]   See Doc. 30, Ord. Dated May 29, 2019.

filed notice that he had served Defendant with his second designation of expert witnesses.[19] On June 18, 2019, with the court's leave, Plaintiff filed his third designation of expert witnesses.[20]

On August 16, 2019, Plaintiff filed his response to Defendant's motion for summary judgment.[21] On the same day, Defendant filed its pending motion to exclude Plaintiff's expert Michael Armstrong.[22] On August 26, 2019, Plaintiff filed his response to Defendant's motion to exclude.[23] On the same day, Defendant filed its reply in support of its motion for summary judgment.[24]

## II.  Legal Standards

The following standards are relevant to the court's resolution of the pending motions.

### A. <u>Summary Judgment Standard</u>

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

---

[19] See Doc. 31, Pl.'s Not. of 2nd Designation of Expert Witnesses.

[20] See Doc. 35, Pl.'s 3rd Designation of Expert Witnesses.

[21] See Doc. 38, Pl.'s Resp. to Def.'s Mot. for Summ. J.

[22] See Doc. 39, Def.'s Mot. to Exclude.

[23] See Doc. 40, Pl.'s Resp. to Def.'s Mot. to Exclude.

[24] See Doc. 41, Def.'s Reply in Support of Mot. for Summ. J.

Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A., 759 F.3d 498, 504 (5th Cir. 2014). A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Coastal Agricultural Supply, Inc., 759 F.3d at 504 (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues. See id. at 505 (quoting Celotex Corp., 477 U.S. at 323). If the movant carries its burden, the nonmovant may not rest on the allegations or denials in the pleading but must respond with evidence showing a genuine factual dispute. See id. The court must accept all of the nonmovant's evidence as true and draw all justifiable inferences in her favor. Coastal Agric. Supply, Inc., 759 F.3d at 505 (quoting Anderson, 477 U.S. at 255).

**B.   Expert Testimony Standard**

Under the Federal Rules of Evidence and related case law, an

5

expert may be qualified by "knowledge, skill, experience, training, or education." Fed. R. Evid. 702. "To qualify as an expert, the witness must have such knowledge or experience in [his] field or calling to make it appear that his opinion or inference will probably aid the trier in [the] search for truth." United States v. Hicks, 389 F.3d 514, 524 (5th Cir. 2004)(quoting United States v. Bourgeois, 950 F.2d 980, 987 (5th Cir. 1992)). If an opinion is based solely or primarily on experience, it "must be grounded in an accepted body of learning or experience in the expert's field." Fed. R. Evid. 702, advisory committee's note, 2000 Amends. The witness must connect the experience to the conclusion offered, must explain why the experience is a sufficient basis for the opinion, and must demonstrate the appropriateness of the application of the experience to the facts. Id.

Although an expert need not be highly qualified to testify on a given topic, his testimony on subjects in which he is not qualified must be excluded. Huss v. Gayden, 571 F.3d 442, 452 (5th Cir. 2009). An additional limitation on expert witnesses is that they may not offer conclusions of law. C.P. Interests, Inc. v. Cal. Pools, Inc., 238 F.3d 690, 697 (5th Cir. 2001)(citing Owen v. Kerr McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983)).

The expert's testimony must be both relevant and reliable. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999); Smith v. Goodyear Tire & Rubber Co., 495 F.3d 224, 227 (5th Cir. 2007); see

also Fed. R. Evid. 702 & advisory committee's note, 2000 Amends. The burden of establishing this predicate for the expert's testimony falls on the party producing the expert. See Moore v. Ashland Chem. Inc., 151 F.3d 269, 276 (5th Cir. 1998). The trial court has the responsibility of determining whether that party has met its burden. Fed. R. Evid. 104(a); Mathis v. Exxon Corp., 302 F.3d 448, 459-60 (5th Cir. 2002); see also Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). The court also determines, as a matter of law, whether the expert is qualified to testify on the subjects on which he offers opinions. Mathis, 302 F.3d at 459. The trial judge has "wide latitude in determining the admissibility of expert testimony;" yet, "the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702, advisory committee's note, 2000 Amends.; Wilson v. Woods, 163 F.3d 935, 936-37 (5th Cir. 1999)(quoting Watkins v. Telsmith, Inc., 121 F.3d 984, 988 (5th Cir. 1997)).

To be relevant, the testimony must assist "the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; see also United States v. Hicks, 389 F.3d 514, 524 (5th Cir. 2004); Daubert, 509 U.S. at 591. The Federal Rules of Evidence define relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. In other words, the expert testimony

must be applicable to the facts in issue. Daubert, 509 U.S. at 592-93.

Reliability hinges on the sufficiency of the facts or data upon which the opinion is based, the dependability of the principles and methods employed, and the proper application of the principles and methods to the facts of the case. See Fed. R. Evid. 702. The trial judge must make certain that the expert applied "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co., Ltd., 526 U.S. at 152.

### III. Analysis

Pending before the court are Defendant's motion for summary judgment and its motion to exclude Plaintiff's expert witness. Defendant's motion for summary judgment requires the court to first resolve the motion to exclude.

**A.  Motion to Exclude**

In its motion to exclude, Defendant argues that Plaintiff's expert, Michael Armstrong Jr., M.D. ("Dr. Armstrong"), should be excluded because Plaintiff's disclosures do not meet the requirements of Federal Rule of Civil Procedure ("Rule") 26(a)(2)(B), Dr. Armstrong is unqualified, and Dr. Armstrong's opinions are unreliable.

**1.  Rule 26(a)(2)(B)**

Rule 26(a)(2)(B) provides that if a witness is retained or

specially employed to provide expert testimony then their disclosure must be accompanied by a report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Defendant argues that Plaintiff's disclosure does not comply with the first, second, or fourth requirements of Rule 26(a)(2)(B).

Dr. Armstrong's report contains: (1) an "Opinions Held in This Case" section that details Dr. Armstrong's opinions and basis for those opinions; (2) a "Documents reviewed" sections where he lists all documents he reviewed in reaching his conclusions; (3) a "Chronological History of present illness" section where he extensively details his understanding of Plaintiff's medical history that he reviewed in reaching his conclusions; and (4) a "Qualifications" section that lists his qualifications as a physician trained in otolaryngology.[25] Attached to Dr. Armstrong's

---

[25] See Doc. 40-1, Ex. 1 to Pl.'s Resp. to Def.'s Mot. to Exclude, Dr. Armstrong Report & CV.

report is his curriculum vitae, which contains a lengthy list of the publications he authored.[26]

Defendant's entire Rule 26(a)(2)(B) argument consists of disagreements with the facts Dr. Armstrong discussed and the conclusions he reaches, and concludes that Dr. Armstrong is not qualified.[27] These are not proper reasons for Dr. Armstrong's exclusion under Rule 26(a)(2)(B). The court finds that Dr. Armstrong's report complies with the requirements of Rule 26(a)(2)(B).

### 2. Dr. Armstrong's Qualifications

Defendant argues that Dr. Armstrong is unqualified to render an opinion in this case because his experience is in private practice and not in a teaching hospital such as the MEDVAMC.[28] Dr. Armstrong is a physician trained in otolaryngology.[29] Dr. Armstrong routinely performs reconstructive and cosmetic nasal surgery. As an Assistant Clinical Professor at the Virginia Commonwealth University - Medical College of Virginia, Dr. Armstrong is actively involved in the teaching of resident physicians and nurse practitioners.[30]

---

[26] See id. p. 37-40 of 41

[27] See Doc. 39, Def.'s Mot. to Exclude pp. 2-10.

[28] See id. pp. 11-12.

[29] See Doc. 40-1, Ex. 1 to Pl.'s Resp. to Def.'s Mot. to Exclude, Dr. Armstrong Report & CV p. 11 of 41.

[30] See id.

Despite Dr. Armstrong's obvious qualifications, Defendant argues that Dr. Armstrong cannot testify in this case because he "has never worked in a VA hospital" and "is unfamiliar with the policies, procedures, practices, and services offered, and not offered for budgetary or other reasons."[31] Defendant also takes issue with Dr. Armstrong's being certified in Virginia and not Texas, and never supervising students in a teaching program at a teaching hospital.[32]

None of Defendant's objections go to Dr. Armstrong's qualifications to testify regarding nasal surgery. The court is only concerned with whether Dr. Armstrong is capable of testifying on the proper standard of care regarding the surgeries that Plaintiff underwent. Defendant has not shown that the standard of care differs for those surgeries based on the type of hospital.

Regarding the budgetary differences and Defendant's stance that MEDVAMC never performs purely cosmetic surgery, Dr. Armstrong himself admits that the "removal of a nasal dorsal hump is never medically necessary for the correction of nasal obstruction."[33] The misunderstanding regarding whether Plaintiff's dorsal hump would be removed does not concern Dr. Armstrong's qualifications and Dr. Armstrong does not attempt to testify that Plaintiff's dorsal hump

---

[31] See Doc. 39, Def.'s Mot. to Exclude p. 11.

[32] See id.

[33] See Doc. 40-1, Ex. 1 to Pl.'s Resp. to Def.'s Mot. to Exclude, Dr. Armstrong Report & CV p. 16 of 41.

should have been removed. Rather, he opines that Plaintiff should not have been told that his dorsal hump would be removed and should not have been allowed to undergo the operation under a misunderstanding as to what was occurring.[34] Defendant has not shown how Dr. Armstrong is unqualified to make these opinions or how the standard of care governing these issues differs at MEDVAMC from other medical institutions. Accordingly, Dr. Armstrong should not be excluded due to a lack of qualifications.

### 3. Reliability of Dr. Armstrong's Opinions

Finally, Defendant argues that Dr. Armstrong's opinions are unreliable because he rarely references the medical record, does not provide sources, and he has not shown that his opinion on the applicable standards of care is applicable in a teaching hospital.[35]

Dr. Armstrong's report contains an entire section summarizing the medical records.[36] Dr. Armstrong cites to numerous sources in his report.[37] Finally, the court is not persuaded by Defendant's continued distinction between MEDVAMC and other medical institutions regarding the applicable standards of care in this lawsuit. To the extent there are general differences between MEDVAMC and other medical institutions, Defendant has only

---

[34] See id. pp. 16-17 of 41.

[35] See Doc. 39, Def.'s Mot. to Exclude pp. 12-13.

[36] See Doc. 40-1, Ex. 1 to Pl.'s Resp. to Def.'s Mot. to Exclude, Dr. Armstrong Report & CV pp. 18-25 of 41.

[37] See id. pp. 26-32 of 41.

identified fodder for cross-examination, not a proper basis to exclude Dr. Armstrong. Regarding the actual standards of care, Defendant has not shown how the applicable standards of care at MEDVAMC are different from private institutions as applied to the surgeries that Plaintiff underwent. For these reasons, Defendant's arguments regarding the reliability of Dr. Armstrong's opinions have no merit.

Defendant has not pointed the court to anything that requires that Dr. Armstrong be excluded from testifying. The court is confident that Defendant can take up its issues with Dr. Armstrong's testimony on cross-examination at trial. Accordingly, Defendant's motion to exclude is **DENIED**.

**B.**     **Motion for Summary Judgment**

The entire basis of Defendant's motion for summary judgment is that Plaintiff's failure to designate an expert to testify is fatal to Plaintiff's medical negligence case. Defendant's motion for summary judgment was filed prior to Plaintiff's designation of Dr. Armstrong as an expert witness.

As discussed above, Plaintiff's expert, Dr. Armstrong, is not being excluded from testifying. Accordingly, Plaintiff has an expert that can testify as required by Plaintiff's medical negligence cases and Defendant's motion for summary judgment should be **DENIED**.

## IV. Conclusion

Based on the foregoing, the court **ORDERS** that Defendant's Motion to Exclude is **DENIED** and **RECOMMENDS** that Defendant's Motion for Summary Judgment be **DENIED**.

The Clerk shall send copies of this Memorandum, Recommendation, and Order to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13.  Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically.  Copies of such objections shall be mailed to opposing parties and to the chambers of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 21st day of January, 2020.

Nancy K. Johnson
United States Magistrate Judge